## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EARL JOHNSON**                                   **CIVIL ACTION**

**versus**                                         **NO. 14-543**

**N. BURL CAIN**                                   **SECTION: "E" (1)**

## REPORT AND RECOMMENDATION

Petitioner, Earl Johnson, a state prisoner serving a life sentence for first degree murder, previously filed a federal application for *habeas corpus* relief in this Court.  Based on a Report and Recommendation issued by the undersigned United States Magistrate Judge, that application was dismissed as untimely by the United States District Judge in November of 2013. Johnson v. Cain, Civ. Action No. 12-974 "E"(1), 2013 WL 5961101 (E.D. La. Nov. 7, 2013).  On or about February 26, 2014, petitioner then instituted the current proceeding by filing a pleading which he titled "Writ of Mandamus";[1] however, despite the title of his pleading, he is not in fact seeking a writ of mandamus.  On the contrary, it appears that he instead wants to reopen (or as he puts it, "renew"[2]) the aforementioned federal *habeas corpus* proceeding, arguing that his petition should not have been dismissed as untimely because he is actually innocent.  For the following reasons, relief should be denied.

When the Report and Recommendation in the *habeas corpus* proceeding was issued on September 25, 2012, it was clear that a petitioner's purported actual innocence had no bearing on

---

[1] Rec. Doc. 3.

[2] Rec. Doc. 4, p. 1.

the timeliness of a *habeas corpus* application in this federal Circuit.  <u>Cousin v. Lensing</u>, 310 F.3d 843, 849 (5th Cir. 2002) ("The one-year limitations period established by  [28 U.S.C.] § 2244(d) contains no explicit exemption for petitioners claiming actual innocence of the crimes of which they have been convicted.  As a consequence, a petitioner's claims of actual innocence are relevant to the timeliness of his petition if they justify equitable tolling of the limitations period.  We have previously held that they do not.").  However, the law on that point subsequently changed on May 28, 2013, when the United States Supreme Court issued its opinion in <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924, 1928 (2013).  In <u>McQuiggin</u>, the Supreme Court held:  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations."  <u>Id</u>. at 1928.  When the United States District Judge later adopted the undersigned's Report and Recommendation in November of 2013, there was no indication that <u>McQuiggin</u> had been considered.  Nevertheless, if petitioner was of the opinion that the Court erred in dismissing his federal *habeas corpus* application as untimely, his recourse was to appeal.  He did not exercise that option.[3]

In any event, out of an abundance of caution, the undersigned notes petitioner has not established that he is entitled to have his *habeas corpus* proceedings reopened.  If that is in fact the

---

[3] The undersigned is aware that petitioner did not receive the Court's judgment when it was originally entered.  However, that was solely petitioner's fault: the judgment was returned by the postal service as undeliverable as a result of his failure to comply with the Local Rule requiring him to keep the Court apprised of his current address.  Local Rule 11.1 ("Each attorney and pro se litigant has a continuing obligation promptly to notify the court of any address or telephone number change.").  Nevertheless, when petitioner learned of the judgment, and he could have filed a motion to reopen the time to file an appeal pursuant to Rule 4(a)(6) of the Federal Rules of Appellate Procedure.  He did not do so.

relief he is seeking, he should have filed a Rule 60(b) motion in Civil Action No. 12-974.  He did

not.  Moreover, it would be futile for the Court to construe his "Writ of Mandamus" as such a motion

and order that it be filed and considered in Civil Action No. 12-974.  Even if the Court were to take

that approach, petitioner ultimately would not be entitled relief under Rule 60(b) for the following

reasons.

> Rule 60(b) provides:
>
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>>
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>>
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>>
>> (4) the judgment is void;
>>
>> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>>
>> (6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b).

As noted, petitioner's argument, liberally construed, is that his federal application

should not have been dismissed as untimely because he is actually innocent.  However, *even if* the

District Judge failed to consider the potential applicability of McQuiggin in dismissing the federal

application as untimely, and *even if* that failure could justify relief in some instances, it would not do so here because petitioner has not made the showing required under McQuiggin.

In McQuiggin, the United States Supreme Court explained:  "We caution ... that tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  As the United States Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted).  With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred." Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 Fed. App'x 605, 613 (6th Cir. 2013).

Therefore, a logical starting point in a McQuiggin analysis is a consideration of the "old" evidence in the case, i.e. the evidence presented at trial and on which a petitioner's conviction was based.  Here, that evidence was recounted in the Louisiana Fourth Circuit Court of Appeal's summary of the facts on direct appeal:

> Tammy Maltese and her fiancé Jeffrey Mattio drove to an ATM machine at First NBC on Elysian Fields and Gentilly Boulevard at about 1:00 a.m.  Maltese testified that Mattio inserted his card into the machine and as they waited for the withdrawn money a man approached the car and demanded money.  Mattio, a sheriff's deputy, told Maltese to get his gun from under the seat, and

- 4 -

Maltese put the gun on the seat.  The perpetrator said, "Give me the money, I won't shoot you."  Maltese heard Mattio gasp, realized he was shot, and flagged a passing motorist who called the police.

Dr. Richard Tracey, forensic pathologist, performed the autopsy on Mattio and determined that the fatal bullet was from a .25 to .38 caliber weapon.

The jury viewed a security surveillance video from the ATM machine.  Mattio's bank card transaction was documented showing that ten dollars was dispensed at that machine at 12:51 a.m.  James Incaprera of the First Commerce Corporation security department said that the ATM machine protects forgotten cards by pulling the card back into the machine if it is not taken within ten seconds after the transaction.  Mattio's card remained in the machine.

Detective Gary Marchese investigated the shooting and found a red pickup truck in the middle of Elysian Fields with both doors open and a crumpled ten dollar bill and blood on the door frame.  Det. Marchese found a wallet on the ground near the ATM machine and a receipt in the machine.  Det. Marchese viewed the security video which did not clearly show the suspect's face but showed his pants with a torn back pocket.  Det. Marchese learned defendant's name through a confidential informant.  Defendant had been arrested in an unrelated incident and possessed a gun which was tested and proved to be the gun used in Mattio's murder.  The detective procured a search warrant for 1743 St. Anthony Street and found in defendant's dresser some ammunition, tan pants and a gray shirt with red strips.  Det. Marchese identified the tan pants as those worn by the gunman in the video of Mattio's murder.

The defendant was apprehended in another unrelated incident.

Brent McKinney testified that he was with defendant the night of the murder.  McKinney was driving and the defendant told him to stop because defendant wanted to get some money.  McKinney testified that defendant had a gun and walked toward the bank on Elysian Fields and Gentilly Boulevard.  McKinney heard a gun shot and immediately saw Johnson jogging toward the car.  McKinney testified that when defendant got into the car he said, "I had to shoot him."[4]

---

[4] State v. Johnson, No. 94-KA-1208, at pp. 1-3 (La. App. 4th Cir. May 8, 1996).  A copy of that decision was attached to petitioner's federal application in Civil Action No. 12-974, and it appears in that record at Rec. Doc. 3-1.

The foregoing "old" evidence was obviously compelling evidence of guilt.  To establish that he falls within the "actual innocence" exception, petitioner must now counter that "old evidence" with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  And, as already noted, he must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  McQuiggin, 133 S. Ct. at 1928.  He falls far short of that mark.

Petitioner argues that he could not have committed the crime because he was playing a card game, "spades," at the time the murder was committed.  He contends that the police were aware of his innocence because a police report, which he alleges was withheld from the defense, shows that Brent McKinney informed the police of that fact.  The pertinent part of that report states:

> On Monday, August 10, 1992 at 7:45 P.M. Detectives Marchese and Alonzo met with Brent McKinny at his residence at 1523 Jefferson St., Gretna La. and questioned him about his knowledge of the murder of Jeffrey Mattio and his whereabouts on the night of Friday, July 31, 1992 until the early morning hours of Saturday, August 1, 1992. *McKinny first stated that on the night in question himself, "Pete" (A.K.A. Gerald Johnson) and Earl Johnson, played spades all night until daybreak in the Florida project.* (Emphasis added)[5]

However, that same report states that, upon further questioning, McKinney then admitted that he and petitioner in fact left at approximately 8:00 p.m. and "drove around checking out bars until around 1:00 A.M."  Further, in his formal recorded statement given the next day, McKinney

---

[5] A copy of the police report appears at page 5 of Rec. Doc. 3-1 in Civil Action No. 12-974.

admitted that the murder occurred while they were driving around and recounted the events in a manner consistent with his testimony at trial.[6]

Even if the Court assumes that the police report was in fact withheld from the defense, it does not support petitioner's contention that he was playing cards all night.  Quite the contrary, as noted, McKinney quickly retracted his statement that they "had played spades all night" and admitted that they had not actually done so.  Therefore, there is no basis on which to conclude that McKinney would have been successfully impeached such that "no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt." McQuiggin, 133 S. Ct. at 1928.  See Sawyer v. Whitley, 505 U.S. 333, 349 (1992) ("[L]atter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [witness's] account ...."); Crayton v. Cain, Civ. Action No. 02-2162, 2013 WL 5305673, at  (E.D. La. Sept. 19, 2013) (a suppressed police report "which *might* have proved minimally beneficial for impeachment purposes" did not suffice to warrant Rule 60(b) relief based on McQuiggin).

Petitioner additionally argues that his mother could also have testified that he was playing cards that night.  That contention merits little consideration because it simply does not constitute *new* evidence as required by McQuiggin.  Even if petitioner did play cards at some point that night, he obviously knew all along whether his mother was present at the card game.  If she had evidence to offer, she could have been called to testify at trial as an alibi witness.  Further, in any

---

[6] A transcript of that recorded statement appears at pages 23-28 of Rec. Doc. 3-1 in Civil Action No. 12-974.

event, because a mother's testimony would be inherently suspect, this Court simply cannot say that "no juror, acting reasonably," would have voted to convict petitioner if her testimony had been presented at trial.  See Schlup v. Delo, 513 U.S. 298, 332 (1995) (in evaluating evidence offered in support of an "actual innocence" claim, a court may consider how "the likely credibility of the affiants bear on the probable reliability of that evidence"); Porter v. Adams, No. CV F 03-6431, 2007 WL 2703195, at *9 (E.D. Cal. Sept. 14, 2007) ("[I]n order to be credible, a claim of actual innocence requires the petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial.  The court finds the declarations offered by Petitioner to be rather low in terms of reliability, both because of their tardy presentation and because the declarants, consisting of Petitioner and his family members, are hardly disinterested witnesses."  (citation, quotation marks, and ellipsis omitted)); Banks v. Idaho State Correctional Institution, No. CV-02-397, 2006 WL 2850494, at *15 (D. Idaho Sept. 28, 2006) (an affidavit from petitioner's girlfriend was not sufficiently reliable to support an "actual innocence" claim).

For all of these reasons, petitioner would not be entitled to relief even if the instant "Writ of Mandamus" were to be filed in Civil Action No. 12-974 and construed as Rule 60(b) motion in that case.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's "Writ of Mandamus" be **DENIED** and that this matter be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[7]

New Orleans, Louisiana, this fourth day of November, 2012.

**SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE**

---

[7] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.